STATE of Utah, Plaintiff and Appellee,

v.

Francisco TINOCO, Defendant and Appellant.

No. 920665–CA.

Court of Appeals of Utah.

Oct. 6, 1993.

---

Ronald S. Fujino (argued), and Lisa J. Remal, Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant-appellant.

Jan Graham and Kris C. Leonard, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff-appellee.

Before BILLINGS, GREENWOOD and ORME, JJ.

## OPINION

BILLINGS, Presiding Judge:

Defendant Francisco Tinoco appeals his conviction of aggravated assault, a third degree felony, in violation of Utah Code Ann. § 76–5–103 (1990). We affirm.

## FACTS

On April 20, 1992, defendant, his friend Rogellio Quinones, and his neighbor Jesus Estrada were drinking beer and visiting in defendant's home. While there, defendant shot Estrada in the upper arm with a shotgun. Trial testimony conflicted on the events leading to the shooting. According to defendant, he intentionally shot the victim in self-defense because the victim was belligerent and lunged at defendant in a threatening manner. According to the victim, he was leaving the house, believing defendant and Quinones were going to fight, when defendant deliberately shot him.

Defendant was charged with attempted criminal homicide and the jury was instructed on the lesser included offense of aggravated assault. Defendant's counsel objected to the jury instructions defining the crimes of assault and aggravated assault. The trial court refused to modify the instructions. The jury convicted defendant of aggravated assault.

Raising two related arguments, defendant appeals. First, he argues the trial court failed to appropriately instruct the jury on the need for an intentional or knowing mental state to find him guilty of assault under one subsection of the statute. Second, he argues the contested jury instructions allowed the jury to convict him of reckless attempted aggravated assault, a nonexistent crime. The State responds to both arguments by asserting any error is harmless. It further contends the second argument was not preserved for appeal.

## STANDARD OF REVIEW

An appeal challenging a trial court's refusal to give a requested jury instruction or claiming that a jury instruc-

tion incorrectly states the law presents a question of law which we review for correctness. *State v. Archuleta*, 850 P.2d 1232, 1244 (Utah 1993); *State v. Mincy*, 838 P.2d 648, 658 (Utah App.1992), *cert. denied*, 843 P.2d 1042 (Utah 1992). Even if we find an error, however, we will reverse only if the defendant shows a reasonable probability the error affected the outcome of his case. *See State v. Garrett*, 849 P.2d 578, 580 (Utah App.1993).

## THE CONTESTED INSTRUCTIONS

The instruction given by the judge regarding aggravated assault required the jury to find the following elements:

1. That on or about the 21st day of April 1992 in Salt Lake County, State of Utah, the defendant Francisco Tinoco assaulted Jesus [Estrada]; and

2. That he did so by the use of a dangerous weapon or other means or force likely to produce death or serious bodily injury;

3. That the said defendant did so recklessly, intentionally or knowingly; and

4. That the defendant did so unlawfully and without legal justification.[1]

█ To find aggravated assault, the jury must first find an assault occurred. It must then decide if the assault was carried out with a dangerous weapon or other means likely to produce death or serious injury.[2]

The instruction on assault informed the jury:

"Assault" is:

(a) an attempt, with unlawful force or violence, to do bodily injury to another; or

(b) a threat, accompanied by a show of immediate force or violence, to do bodily injury to another; or

(c) an act, committed with unlawful force or violence, that causes bodily injury to another.

This instruction essentially sets forth the statutory definition of assault contained in Utah Code Ann. § 76–5–102(1) (Supp.1993).

According to defendant, because an attempt requires intentional conduct,[3] the jury instructions should have been modified to clarify the need for an intentional mental state under subsection (a) of the assault instruction. Defendant argues the reckless mens rea contained in paragraph 3 of the aggravated assault instruction, when read in conjunction with subsection (a) of the assault instruction, allowed the jury to convict him of reckless attempted assault. Thus, defendant claims the trial court's failure to instruct the jury on the need for an intentional mental state constitutes error.

Defendant's counsel proposed two modifications to the jury instructions. First, she asked the judge to insert the term "intentionally" between "to" and "do" in subsection (a) of the assault instruction. It would thus read: [A]n attempt, with unlawful force or violence, to *intentionally* do bodily injury to another. Second, she asked the judge to add the clause "whichever is applicable" to the end of subsection 3 of the elements instruction. It would thus read: That the said defendant did so recklessly, intentionally or knowingly, *whichever is applicable.*

## REFUSAL TO MODIFY INSTRUCTIONS

█ Even if the court's refusal to modify the jury instructions was an error, we

---

1. The language in paragraphs 2 and 3 of this instruction has been approved by our supreme court. *See State v. Speer*, 750 P.2d 186, 191 (Utah 1988).

2. Utah law provides:

 (1) A person commits aggravated assault if he commits assault as defined in Section 76–5–102 *and* he:
 (a) intentionally causes serious bodily injury to another; or

 (b) uses a dangerous weapon as defined in Section 76–1–601 or other means or force likely to produce death or serious bodily injury.
 Utah Code Ann. § 76–5–103 (1990) (emphasis added). As the supreme court has noted, aggravated assault can be committed by a reckless act under section 76–5–103(1)(b). *State v. Speer*, 750 P.2d 186, 191 (Utah 1988).

3. *See State v. Howell*, 649 P.2d 91, 94 n. 1 (Utah 1982).

will not reverse defendant's conviction unless that error is harmful. *See State v. Garrett,* 849 P.2d 578, 580 (Utah App. 1993). For there to have been any harm it must have been reasonably possible for the jury to have convicted defendant under subsection (a) of the assault instruction. Defendant points to the instruction and the prosecutor's closing argument as evidence of that possibility. Defendant recites the portion of the prosecutor's closing argument where she reiterated the three possible bases for finding an assault. He does not set forth the prosecutor's next statements which recognize that the facts in this case fall clearly within subsection (c) of the assault instruction:

> [W]hen you look at those, I think you will see that there certainly was an attempt to do bodily injury to another, and *there was an act committed with unlawful force or violence that certainly caused bodily injury to another,* namely Jesus. Now if that attempt, excuse me, *if that act that caused bodily injury to another was done with a dangerous weapon, which certainly that shotgun qualifies as,* then you may consider how the defendant did this. (Emphasis added).

The prosecutor's reference to the act being committed is fully supported by the record. Defendant testified he intentionally shot Jesus Estrada. Numerous other witnesses corroborated defendant's testimony. Defendant's only justification was that he acted in self-defense. There was no testimony whatsoever about any *attempt* by defendant to injure Mr. Estrada. The jury's conviction on assault was necessarily based on subsection (c) of the assault instruction.

Although inclusion of the language proposed by defense counsel might have made the jury instruction more accurate,[4] subsection (a) of the assault instruction simply did not apply to the facts of this case. Thus, at most, the omission constitutes harmless error. *See State v. Jones,* 734 P.2d 473, 476 (Utah 1987) (holding failure to include language to make instruction more precise harmless when not applicable to facts of case). Therefore, the trial court's refusal to modify the jury instructions does not require reversal.

## LEGAL IMPOSSIBILITY

 In his second argument, defendant asserts that he was convicted of reckless attempted assault, a legally impossible crime, which renders the conviction invalid. Recognizing trial counsel's failure to preserve this issue for appeal, defendant asserts a manifest injustice will occur unless we address this issue. *See* Utah R.Crim.P. 19(c). The State responds that the instruction caused no harm and thus there is no manifest injustice. We agree.

Defendant maintains a recent supreme court case on legal impossibility compels us to overturn his conviction. In *State v. Haston,* 846 P.2d 1276 (Utah 1993) (per curiam), the supreme court reversed a conviction because the jury was instructed in such a way as to allow it to convict defendant for an attempted depraved indifference homicide. In *Haston,* the "[d]efendant shot the victim, Tate, in the chest at close range during a drunken quarrel. The shot did not kill Tate, though it caused considerable damage...." *Id.* at 1277 n. 1. Defendant was charged with, and convicted of, attempted second degree murder in violation of Utah Code Ann. § 76–5–203(1)(a), (b), or (c) (1990). Subsections (a) and (b) of that statute require an intentional or know-

---

4. We note it is not entirely clear that an assault completed under subsection (a) of the statute requires a mental state greater than recklessness. The State points out it is at least arguable that the general mens rea statute, which provides that recklessness is a sufficiently culpable mental state for crimes that do not set forth a necessary mental state, should apply to the specifically defined crime of assault by attempt. *See* Utah Code Ann. §§ 76–2–102 (general mens rea requirements), 76–4–101 (general attempt statute), 76–4–301 (attempt crime prevails over general attempt statute), 76–5–102 (defines completed assault as attempt) (1990). On the facts of this case, we have no need to analyze the interaction among the various sections of the Utah Code which must be considered in answering this question.

We also note the jury was not instructed on the general attempt statute. Thus, counsel's discussion at oral argument regarding the impact of that section on the case, while interesting, was not germane.

ing act. Subsection (c) relating to depraved indifference homicide, however, merely requires an accused individual act recklessly. The supreme court had previously held that attempted depraved indifference homicide was not a crime because the mens rea of recklessness would not support a criminal charge under the attempt statute. *See State v. Vigil,* 842 P.2d 843, 848 (Utah 1992). Thus, it reversed Haston's conviction.

*Haston,* however, is easily distinguishable from the situation at hand. In *Haston,* the evidence before the jury would have supported a conclusion that, while the defendant did not intend or know his actions would cause death, firing a gun during a drunken quarrel was a reckless act. Thus, it was possible Haston was convicted of a nonexistent crime. In contrast, in this case defendant admitted he did the act necessary to constitute assault, i.e., he intentionally shot the victim, though he claimed in self-defense. On the uncontested facts, and the instructions on the law given to it, the jury could not have convicted him of an assault under the attempt section, but rather necessarily convicted him under subsection (c), the completed act section. There is no reasonable possibility that defendant is "incarcerated for a crime which is not recognized in Utah." *Haston,* 846 P.2d at 1277. We cannot say that a manifest injustice exists when no facts support the theoretical possibility of a conviction for a legally impossible crime. Thus, defendant's second argument fails.

## CONCLUSION

The trial court's refusal to modify the jury instructions did not create a reasonable probability of a more favorable outcome for defendant. Additionally, no facts support the theoretical possibility of a conviction for an attempted reckless assault. Therefore, we affirm defendant's conviction.

GREENWOOD and ORME, JJ., concur.