Matthew Wayne MILLER, Petitioner and Appellant,

v.

STATE of Utah, et al.; Utah Board of Pardons; Michael R. Sibbett, et al.; Utah Department of Corrections; Scott Carver; and James N. Smith, et al., Respondents and Appellees.

No. 940718–CA.

Court of Appeals of Utah.

Jan. 30, 1997.

---

J. Thomas Bowen, Salt Lake City, for Petitioner and Appellant.

Jan Graham, Attorney General, and Thomas B. Brunker, Assistant Attorney General, Salt Lake City, for Respondents and Appellees.

Before DAVIS, P.J., and BENCH and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Petitioner Matthew Wayne Miller seeks review of the trial court's dismissal of his petition for an extraordinary writ, filed pursuant to Rule 65B of the Utah Rules of Civil Procedure. In that petition, petitioner challenged the legality of his no contest plea, his sentencing, and the Board of Pardon's order of restitution. We affirm in all respects except as to the procedures followed in establishing restitution.

## BACKGROUND

The detailed facts underlying petitioner's crime are not relevant to this appeal. Briefly, petitioner bit off a man's nose during a fight. Petitioner was subsequently charged with one count of mayhem and aggravated assault. On May 14, 1992, the parties appeared before the trial court to discuss a proposed plea agreement, pursuant to Rule 11(h)(2) of the Utah Rules of Criminal Procedure. In exchange for petitioner's plea of no contest to the mayhem charge, the prosecutor agreed to recommend no prison time and no restitution. The trial court questioned petitioner at length regarding the voluntariness of his plea and about whether petitioner fully understood the possible results of his no contest plea. Additionally, petitioner signed an affidavit which stated that he fully understood the rights he was relinquishing by pleading no contest. The trial court inquired whether petitioner understood the contents of the affidavit before accepting it. The affidavit was then incorporated as a part of petitioner's plea and entered into the record.

After petitioner pleaded no contest to mayhem, the court continued sentencing in order to allow Adult Probation and Parole (AP & P) to complete a presentence report. On June 22, 1992, petitioner's sentencing hearing was reconvened. Having reviewed the presentence report, which detailed petitioner's past convictions for assaultive behavior, the trial court rejected the prosecutor's sentencing recommendation for petitioner, noting: "The prosecution clearly missed the boat in this case." Accordingly, the trial court sentenced petitioner to an indeterminate term of one to fifteen years in the Utah State Prison and ordered him to pay a $10,000 fine. The trial court did not order petitioner to pay any restitution, consistent with the State's recommendation.

Petitioner took no direct appeal from his sentence. However, he did file a Rule 65B petition challenging his sentence. *See* Utah R. Civ. P. 65B. The trial court denied this petition on its merits. Although petitioner initially sought appellate review of the denial of his petition, he voluntarily withdrew the appeal. Petitioner then appeared before the Board of Pardons (Board), which set a parole date and ordered petitioner to pay restitution in the amount of $10,683 as a condition of his parole. Petitioner then filed his current petition, challenging both the propriety of his plea and sentence, as well as the Board's restitution order. The trial court dismissed petitioner's second petition on October 28, 1994, and petitioner now appeals that dismissal.

Petitioner challenges the legality of his plea and sentence and also disputes the Board's power to order restitution when the trial court did not order restitution. In addition, he challenges procedures followed by the Board in his parole proceedings.

On appeal from dismissal of a petition for extraordinary relief, we review the trial court's conclusions of law supporting the dismissal for correctness. *Neel v. Holden,* 886 P.2d 1097, 1100 (Utah 1994). Furthermore, in reviewing Board actions, we review the " 'fairness of the *process* by which the Board undertakes its sentencing functions[;] ... we do not sit as a panel of review on the result.' " *Monson v. Carver,* 928 P.2d 1017, 1023 (Utah 1996) (quoting *Neel,* 886 P.2d at 1100) (additional quotation marks and citation omitted)

## ANALYSIS

### I.  Claims Involving Petitioner's Plea & Sentence

Rule 65B requires that petitioner "set forth all claims that the petitioner has in relation to the legality of the commitment" in a single petition and bars petitioner from raising new claims in subsequent petitions except for "good cause shown." Utah R. Civ. P. 65B(b)(3). A conviction may also be subject to collateral attack through an extraordinary writ if a petitioner can demonstrate "unusual circumstances" justifying such a reconsideration. *See Hurst v. Cook,* 777 P.2d 1029, 1037 (Utah 1989). However, previously adjudicated claims or claims which should have been raised in prior petitions should be summarily denied if good cause or unusual circumstances cannot be shown. *Id.*

Petitioner previously raised, or should have raised, all of the claims regarding his plea and sentence in his first petition, but argues either good cause or unusual circumstances justify this court considering these issues. Having reviewed the record and the parties' briefs, we agree with the State that petitioner has not shown either good cause or unusual circumstances such as would warrant a reconsideration of his plea and sentence. Accordingly, we affirm the trial court's dismissal of his petition to the extent it collaterally attacks petitioner's plea and sentencing.

### II.  Claims Involving Petitioner's Parole Hearing

As the State concedes, it would have been impossible for petitioner to have challenged the Board's parole and restitution determinations in his first petition because his hearing before the Board had not yet occurred. Accordingly, petitioner properly challenged the Board's action through a Petition for Extraordinary Relief pursuant to Rule 65B, and the trial court erred in concluding those claims were procedurally barred because they had not been raised in his first petition. *See Renn v. Utah State Bd. of Pardons,* 862 P.2d 1378, 1381 (Utah App.1993) ("[T]he scope of appellate review of habeas corpus petitions challenging the Board's decisions 'is limited to a review of procedural due process and does not extend authority for judicial review of the "reasonableness of the parole decision," which is not subject to judicial review under Utah Code Ann. § 77–27–5(3).' " (citations omitted)), *aff'd,* 904 P.2d 677 (Utah 1995).

■ Petitioner raises numerous constitutional arguments in support of his theory that the Board exceeded its power by ordering him to pay restitution when the trial court did not order any restitution.[1] This issue, however, has been definitively answered by the Utah Supreme Court in *Monson.* Although the *Monson* court did not precisely describe what action, if any, the sentencing trial court took in regard to restitution, *Monson*'s language accords the Board broad authority to order restitution as a condition of parole under both the Utah Constitution and statutory provisions. *Id.* at 1024–25. In *Monson,* the supreme court further held that restitution imposed sua sponte by the Board does not increase an inmate's

---

1. We cannot agree with the conclusion of our colleague, Judge Davis, in his concurring opinion, that the sentencing court did not affirmatively decide to not impose restitution. Although we have only the record of the proceedings on the petition for an extraordinary writ before us, that record includes excerpts from the trial proceedings, which clearly indicate that the judge accepted the prosecution's recommendation that no restitution be imposed. Furthermore, as observed in the majority opinion of *Stilling v. Utah Board of Pardons,* 933 P.2d 391, 393 (Utah App. 1997), when we lack a full record regarding this issue, "we must assume the trial court considered restitution in this case and determined it was inappropriate."

punishment in violation of prohibitions against ex post facto laws because the inmate may reject parole and serve out the original sentence and because the sentencing court could have imposed restitution in the first instance. *Id.* at 1026. Therefore, petitioner's constitutional challenges to the Board's power to impose restitution as a condition of his parole fails.

■ Petitioner, however, also challenges the procedures by which the Board established its restitution order, claiming the Board did not follow required statutory procedures or provide him a proper hearing. We agree. The Board is required to "follow both the substantive standards of section 76-3-201 and its procedural requirements." *Id.* at 1028. The Board is therefore required to consider the same factors and provide a similar record of its rationale as is the trial court. *Id.* As in *Monson,* the record before us does not indicate the Board complied with these requirements. We therefore remand this issue to the trial court "for the entry of an order directing the Board to comply with the proper statutory procedure." *Id.* at 1031.

Petitioner also claims he was unconstitutionally denied the assistance of counsel at his parole hearing. Again, *Monson* controls, holding that there is no constitutional right to counsel at parole grant hearings. *Id.* at 1030. Furthermore, petitioner has failed to

demonstrate how the presence of counsel would have affected the proceedings. *Id.*

## CONCLUSION

We affirm the dismissal of petitioner's petition insofar as it relates to his original plea and sentencing and to the Board's authority to impose an order of restitution as a condition of parole. We remand on the limited issues of the procedures followed by the Board in determining the amount and justification for the restitution order.

BENCH, J., concurs.

DAVIS, Presiding Judge (concurring in result):

I concur with the result reached by the majority and write separately to express my view of the scope of the Utah Supreme Court's decision in *Monson v. Carver,* 928 P.2d 1017, 305 Utah Adv. Rep. 7 (Utah 1996) (plurality opinion).

In the present case, the sentencing trial court's "Judgement, Sentence (Commitment) To Utah State Prison" form includes the following section:

> ... defendant is now adjudged guilty of the above offense and is now sentenced to a term in the Utah State Prison:

Judge's Initials

☐ to a minimum mandatory term of ____ years and which may be for life;
☐ not to exceed five years;

_PBB_ ☑ not less than one year nor more than fifteen years;
☐ not less than five years and which may be for life;

☐ not to exceed ____ years;

_PBB_ ☑ and to pay a fine in the amount of $10,000.00
☐ and to pay restitution in the amount of $____ to ____

_PBB_ ☑ Defendant is remanded into the custody of the Sheriff of Tooele County, for delivery to the Utah State Prison, Draper, Utah, where defendant shall be confined and imprisoned in accordance with this Judgment and Commitment.

---

As indicated, the sentencing court neither initialed the available line, nor placed an "x" in the available box preceding the restitution line.

In upholding the Board's authority to order restitution as a condition of Miller's parole, the majority states: "Although the

*Monson* court did not precisely describe what action, if any, the sentencing trial court took in regard to restitution, *Monson*'s language accords the Board broad authority to order restitution as a condition of parole under both the Utah Constitution and statutory provisions." I agree that *Monson* does not reveal the sentencing trial court's action, if any, taken in regard to restitution. As a result, I do not believe that the Board's authority under *Monson* extends, for example, to a circumstance where the trial court made an affirmative ruling on restitution.

As noted in *Stilling v. Utah Board of Pardons,* 933 P.2d 391 (Utah App.1997) (Davis, P.J., concurring in result), "where the criminal trial court has failed to meet its statutorily imposed judicial duty to address restitution at the time of sentencing, the Board does not violate the separation of powers provision of the Utah Constitution by imposing restitution as a condition of parole." *Id.* at 396; *see also* Utah Const. art. V, § 1 ("[N]o person charged with the exercise of powers properly belonging to [one of the three distinct branches of government], shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.").

As in *Stilling,* this case does not involve an instance in which the Board is imposing a condition of restitution on an inmate's parole in direct contravention to a sentencing court's affirmative determination to the contrary. Although the parties recommended that petitioner receive no prison time and that no restitution be ordered, the record does not reveal that the trial court made an affirmative determination not to order restitution. Indeed, the trial court affirmatively *rejected* the parties' recommendations with reference to prison and made no restitution determination under the provisions of Utah Code Ann. § 76–3–201(3)(b) (1990) (current version at Utah Code Ann. § 76–3–201(8)(a)– (d) (Supp.1996)); *see also State v. Haston,* 811 P.2d 929, 936 (Utah App.1991) (discussing mandatory requirement that restitution be addressed on record at time of sentencing), *rev'd on other grounds,* 846 P.2d 1276 (Utah 1993). As a result, it was appropriate

for the Board to order restitution in this case notwithstanding *Monson.*

However, because the *Monson* restitution analysis does not address separation of powers, I believe it is inappropriate to assume the Utah Supreme Court had before it a case in which the sentencing court explicitly ruled on the restitution issue. Also, because the *Monson* court did not consider separation of powers, it is inappropriate to presume that the supreme court vested the Board with over broad authority to order restitution as a parole condition, and the facts of this case do not require such an expansive interpretation of *Monson.* Accordingly, inasmuch as the majority opinion interprets *Monson* as affording the Board broad authority in ordering parole conditions, without extending that interpretation to instances where the trial court expressly considered restitution at the time of sentencing, I concur.