2025 UT App 59

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MICHAEL K. COLWELL,
Appellant.

Opinion
No. 20220879-CA
Filed May 1, 2025

Fourth District Court, Heber Department
The Honorable Jennifer A. Mabey
No. 201500229

Gregory W. Stevens and Benjamin Miller,
Attorneys for Appellant

Derek E. Brown and Tanner R. Hafen,
Attorneys for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M.
CHRISTIANSEN FORSTER concurred.

LUTHY, Judge:

¶1　Michael K. Colwell was convicted of one count of possession of drug paraphernalia and two counts of possession of a firearm by a restricted person. He challenges the firearm convictions on the ground that the statute under which he was convicted was unconstitutional as applied to him. Colwell did not raise this constitutional challenge in the district court, leaving it presumptively unpreserved for appellate review. Acknowledging as much, Colwell contends that the exceptional circumstances exception to the preservation rule applies in this case and allows us to address his constitutional challenge in the first instance. We conclude that the exceptional circumstances exception does not

apply here, and we thus affirm Colwell's convictions without reaching the merits of his constitutional claim.

## BACKGROUND

¶2 In 2009, Colwell was convicted of felony DUI. That conviction rendered him a "restricted person" under the version of Utah Code section 76-10-503 then in effect and made it unlawful for him to thereafter possess a firearm. *See* Utah Code § 76-10-503(1)(b)(i), (3)(a) (2020).[1]

¶3 Eleven years later, in July 2020, officers executed a search warrant at Colwell's house and found two firearms—a shotgun and a pistol—in Colwell's bedroom closet. The officers also found several glass pipes with residue on them, multiple baggies containing a crystal-like substance that they recognized as methamphetamine, and a bottle with pills identified as carisoprodol. Colwell was charged with two counts of possession of a firearm by a restricted person, two counts of possession of a controlled substance, and one count of possession of drug paraphernalia. The case proceeded to trial.

¶4 Trial was initially set for two days in April and May 2022 but was later continued to August 2022. On June 23, the United

---

1. The relevant terms of Utah Code section 76-10-503 remained substantively unchanged from 2009 to 2023. *Compare* Utah Code § 76-10-503(1)(b)(i), (3)(a) (2009), *with id.* § 76-10-503(1)(b)(i), (3)(a) (2022). Those terms were substantively amended effective May 2023. *Compare id.* § 76-10-503(1)(b), (3)(a) (2020), *with id.* § 76-10-503(1)(b), (3)(a) (2023); *see also* Firearm Possession Revisions, ch. 425, § 2, 2023 Utah Laws 4352, 4354–55; Restricted Persons Amendments, ch. 2, § 1, 2023 Utah Laws 1st Spec. Sess. 5523, 5524. We cite the version of the section in effect at the time of Colwell's conduct leading to the charges of possession of a firearm by a restricted person, namely, Utah Code section 76-10-503 (2020).

States Supreme Court issued its opinion in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), which modified the contours of Second Amendment jurisprudence. A final pretrial conference was held in Colwell's case on July 20, and trial was held on August 12 and 15. At trial, following the presentation of evidence, the State dismissed one of the charges of possession of a controlled substance, and the remaining charges were submitted to the jury. The jury acquitted Colwell on the other charge of possession of a controlled substance but found him guilty of possession of drug paraphernalia and two counts of possession of a firearm by a restricted person. The district court sentenced Colwell in September 2022, and Colwell then appealed.

## ISSUE AND STANDARD OF REVIEW

¶5    On appeal, Colwell challenges his convictions of possession of a firearm by a restricted person, asserting that—under the approach to the Second Amendment announced in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022)—the statute under which he was convicted was unconstitutional as applied to him. "A constitutional challenge to a statute presents a question of law, which we review for correctness." *State v. Garner*, 2008 UT App 32, ¶ 10, 177 P.3d 637 (cleaned up).

## ANALYSIS

¶6    Colwell acknowledges that he did not raise and thereby preserve in the district court the constitutional challenge he raises on appeal. *See generally State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 ("As a general rule, claims not raised before the trial court may not be raised on appeal."). "The preservation rule applies to every claim, including constitutional questions . . . ." *Id.* (cleaned up). Our supreme court, however, "has recognized three distinct exceptions to preservation: plain error, ineffective assistance of counsel, and exceptional circumstances." *State v. Johnson*, 2017 UT

76, ¶ 19, 416 P.3d 443. "When an issue is not preserved in the trial court, but a party seeks to raise it on appeal, the party must establish the applicability of one of these exceptions to persuade an appellate court to reach that issue." *Id.* Here, Colwell contends that the exceptional circumstances exception applies and allows us to reach his constitutional claim.

¶7 "The exceptional circumstances doctrine is applied sparingly." *Id.* ¶ 29 (cleaned up). It is reserved "for the most unusual circumstances where our failure to consider an issue that was not properly preserved for appeal would . . . result[] in manifest injustice." *Id.* (cleaned up). This exception "is not a catch-all category that may be used to do the work of other exceptions, like plain error, nor should it be viewed as a free-floating justification for ignoring the legitimate concerns embodied in the preservation and waiver rules." *Id.* ¶ 38. Instead, "we apply this exception to reach an unpreserved issue [only] where a rare procedural anomaly has either prevented an appellant from preserving an issue or excuses a failure to do so." *Id.* ¶ 29 (cleaned up). Indeed, it is to be "anchored in the idea of rare procedural anomalies." *Id.* ¶ 38; *see id.* ¶ 31 ("[T]he showing of a rare procedural anomaly [is] requisite to invoking exceptional circumstances."). Only after "a party has shown that a rare procedural anomaly has occurred[] [will we] then consider the effects of the anomaly, and whether those effects warrant an exception to our preservation requirement." *Id.* ¶ 37. Under this latter step of the inquiry, we will consider such factors as whether "a significant constitutional right or liberty interest is at stake,"[2]

---

2. For a time, "if the liberty of an appellant [was] in jeopardy," that "jeopardized liberty" was viewed as a separate, independent exception to the preservation requirement. *State v. Lopez*, 886 P.2d 1105, 1113 (Utah 1994) (cleaned up). That is no longer the case. *See id.* Under our current law, whether "a liberty interest is at stake is merely one factor . . . to be considered when determining whether exceptional circumstances exist." *Id.* (cleaned up).

"whether our failure to consider [the unpreserved issue] would result in manifest injustice," and "judicial economy." *Id.* (cleaned up).

¶8    In *State v. Johnson*, 2017 UT 76, 416 P.3d 443, our supreme court explained that the question of when to apply the exceptional circumstances exception "require[s] case-by-case assessment." *Id.* ¶ 38. In aid of such an assessment, the court cataloged a number of examples of rare procedural anomalies that had previously triggered the court's application of the exception. *See id.* ¶¶ 32–36. As one such example, the court cited *State v. Haston*, 846 P.2d 1276 (Utah 1993), wherein it had "recognized a rare procedural anomaly when controlling precedent is issued that abolishes the offense for which [a] defendant was convicted while the defendant's appeal is pending." *Johnson*, 2017 UT 76, ¶ 33. Summarizing, the court then concluded that "a rare procedural anomaly exists 'where a change in law or the settled interpretation of law color[s] the failure to have raised an issue at trial.'" *Id.* (quoting *State v. Irwin*, 924 P.2d 5, 10 (Utah Ct. App. 1996)).

¶9    Relying on that conclusion from *Johnson*, Colwell argues that the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), which was issued "about six weeks" (indeed, seven weeks and a day) before Colwell's trial, "fundamentally altered our [nation's] jurisprudence concerning restrictions on the right to keep and bear arms protected by the Second Amendment to the United States Constitution," and that the timing of that decision colored his failure to have raised his constitutional challenge below. Colwell candidly concedes that where the *Bruen* decision was issued more than six weeks before his trial, a constitutional challenge based on *Bruen* probably "should have been and reasonably could have been" asserted in the district court. But he maintains that, as articulated by our supreme court, the particular rare procedural anomaly test he relies on is *not* whether trial counsel acted reasonably in failing to raise the issue but is, rather,

simply whether the timing of the change in law *colored* the failure to raise the issue in the trial court. He explains that had our supreme court wanted a bright-line rule that classifies as a rare procedural anomaly only those changes of law that occur, for example, after trial begins, "it could have written that," but "[t]hat's not what [it] wrote." And he further explains that, while *Bruen*'s approach to Second Amendment jurisprudence was clearly "a game-changer," by the time of Colwell's trial, the question of how *Bruen* might apply to the type of statute under which Colwell was charged "was still being . . . discussed." Thus, Colwell contends, the timing of *Bruen*, the uncertainty of its application, and the focus of Colwell's trial counsel on preparing for trial should together qualify *Bruen*'s issuance as a rare procedural anomaly.

¶10 We agree with Colwell that our supreme court's articulation of this variety of rare procedural anomaly permits the possibility of something other than a bright-line rule requiring that a change in settled law occur after trial in order for it to constitute a rare procedural anomaly. But the issuance of *Bruen* seven weeks before trial in this case does not qualify as a rare procedural anomaly. *Bruen* was not a decision touching on some obscure point of law that might initially go unnoticed by reasonable counsel.[3] To the contrary, its issuance was immediately and broadly publicized. *See, e.g.,* Ariane de Vogue & Tierney Sneed, *Supreme Court Says Constitution Protects Right to Carry a Gun Outside the Home*, CNN (Jun. 23, 2022), https://www.cnn.com/2022/06/23/politics/supreme-court-guns-second-amendment-new-york-bruen/index.html

---

3. In the ineffective assistance of counsel context, "[a] lawyer's lack of knowledge [of a recent development in the law] is not alone enough to amount to deficient performance," *State v. Sessions*, 2014 UT 44, ¶ 22, 342 P.3d 738, suggesting that in some circumstances, even reasonable counsel might not immediately become aware of relevant changes in the law.

[https://perma.cc/F9A7-ZC2A]; Alison Durkee, *Supreme Court Strikes Down N.Y. Concealed Carry Law—Could Lead to Rollbacks Nationwide*, Forbes (Jun. 23, 2022), https://www.forbes.com/sites/alisondurkee/2022/06/23/supreme-court-strikes-down-ny-concealed-carry-law/ [https://perma.cc/7K78-UZGX]; Adam Liptak, *Supreme Court Strikes Down New York Law Limiting Guns in Public*, N.Y. Times (Jun. 23, 2022), https://www.nytimes.com/2022/06/23/us/supreme-court-ny-open-carry-gun-law.html [https://perma.cc/344L-SW3U]. It was presumably a matter of particular note among members of the criminal defense bar. And seven weeks provided a workable window within which Colwell could have formulated and submitted a *Bruen*-based argument minimally sufficient to preserve his constitutional claim for appellate review. *See generally John v. John*, 2023 UT App 103, ¶ 38, 536 P.3d 1138 ("For a trial court to be afforded an opportunity to correct an asserted error (1) the issue must be raised in a timely fashion, (2) the issue must be specifically raised, and (3) the challenging party must introduce supporting evidence or relevant legal authority." (cleaned up)). The parties had a pretrial conference with the court about a month following *Bruen*'s issuance, at which Colwell might have raised his potential constitutional argument with the court. And he had more than three weeks after that as well to bring it to the court's attention before trial.

¶11 Given the high-profile nature of *Bruen*, the seven-week window within which Colwell could have raised his constitutional challenge in the district court, and the mandate that the exceptional circumstances doctrine be "applied sparingly" and reserved "for the most unusual circumstances," *Johnson*, 2017 UT 76, ¶ 29 (cleaned up), we conclude that *Bruen*'s issuance in the weeks leading up to trial in this case did not constitute a rare procedural anomaly. Accordingly, the exceptional circumstances exception to the preservation rule does not apply, and we are precluded from considering Colwell's unpreserved constitutional

challenge to the version of Utah Code section 76-10-503 under which he was convicted.

CONCLUSION

¶12    Colwell failed to preserve for appellate review the single, constitutional claim he raises on appeal, and the exceptional circumstances exception to the preservation rule does not apply in this case. We therefore affirm Colwell's convictions without reaching, and thus without expressing an opinion regarding, the merits of his constitutional claim.

―――――――――